IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| GENGHISCOMM HOLDINGS, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| DEPARTMENT 13, INC., | § § | Civil Action No. 2:22-cv-00142 (RWS)(RSP) |
| Defendant. | § § § § § § | |
| | | |
| DEPARTMENT 13, INC., | § § § | |
| Counterclaimant, Third-Party Plaintiff, | § § | |
| v. | § § | |
| GENGHISCOMM HOLDINGS, LLC, | § § | Civil Action No. 2:22-cv-00142 (RWS)(RSP) |
| Counter Defendant, and | § § | |
| STEVE SHATILL, and JONATHAN HUNTER, | § § § | |
| Third-Party Defendants. | § | |

## DEFENDANT DEPARTMENT 13, INC.'S ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT

DEFENDANT'S ANSWER, COUNTERCLAIMS,
AND THIRD-PARTY COMPLAINT

## I.    ANSWER OF DEFENDANT D13

Defendant-Counterclaimant DEPARTMENT 13, INC. ("D13"), by and through

its attorneys ARCADI JACKSON, LLP, and The Shapiro Firm, LLP, answering the Complaint

of GENGHISCOMM HOLDINGS, LLC ("GENGHIS"), dated May 11, 2022 (the "Complaint"),

respectfully state as follows upon information and belief:

### ANSWERING THE PREFATORY "COMPLAINT" SECTION OF THE COMPLAINT

1.      D13 avers that no response is necessary, as the first two sentences of the

Complaint merely states the causes of action alleged in the Complaint without any

allegations and therefore no admission or denial is required.

### ANSWERING THE "PARTIES" SECTION OF THE COMPLAINT

2.      Deny knowledge or information sufficient to form a belief as to the allegations

contained in Paragraph "1" of the Complaint.

3.      Admit the allegations contained in Paragraph "2" of the Complaint.

4.      Admit the allegations contained in Paragraph "3" of the Complaint.

5.      Admit the allegations contained in Paragraph "4" of the Complaint.

### ANSWERING "THE CONTRACT" SECTION OF THE COMPLAINT

6.      Admit the allegations contained in Paragraph "5" of the Complaint.

7.      Admit the allegations contained in Paragraph "6" of the Complaint.

8.      Admit the allegations contained in Paragraph "7" of the Complaint.

9.      Deny each and every allegation in Paragraph "8" of the Complaint.  Deny that the document entitled "Termination of Patent License Agreements" is a valid or enforceable contract or agreement of any sort which imposes any legal duties or obligations on D13. And further aver that said purported "agreement" was not signed by anyone with authority to bind D13.

### ANSWERING THE "JURISDICTION AND VENUE" SECTION OF THE COMPLAINT

10.    D13 neither admits nor denies the allegations contained in paragraph "9" of the Complaint because they consist of legal conclusions to which no response is required. However, D13 denies there exists any basis in law or fact for GENGHIS' claims.

11.     D13 neither admits nor denies the allegations contained in paragraph "10" of the Complaint because they consist of legal conclusions to which no response is required. However, D13 denies there exists any basis in law or fact for GENGHIS' claims.

12.    D13 neither admits nor denies the allegations contained in paragraph "11" of the Complaint because they consist of legal conclusions to which no response is required. However, D13 denies there exists any basis in law or fact for GENGHIS' claims.

13.    D13 neither admits nor denies the allegations contained in paragraph "12" of the Complaint because they consist of legal conclusions to which no response is required. However, D13 denies there exists any basis in law or fact for GENGHIS' claims.

### ANSWERING THE "COUNT I BREACH OF CONTRACT" SECTION OF THE COMPLAINT

14.    As to paragraph 13, D13 repeats and re-alleges its responses to the allegations contained in paragraphs 1 through 12 of the Complaint, as indicated herein above, as if fully set forth herein.

DEFENDANT'S ANSWER, COUNTERCLAIMS,
AND THIRD-PARTY COMPLAINT

15.     Deny each and every allegation contained in Paragraph "14" of the Complaint.

16.     The first two sentences of paragraph "15" of the Complaint state legal conclusions to which no response is required. D13 disputes any basis for the imposition of Colorado law in this case. Deny each and every factual allegation contained in Paragraph "15" of the Complaint. Deny that the document entitled "Termination of Patent License Agreements" is a valid or enforceable contract or agreement of any sort which imposes any legal duties or obligations on D13. And further aver that said purported "agreement" was not signed by anyone with authority to bind D13.

17.     Deny each and every factual allegation contained in Paragraph "16" of the Complaint. Deny that the document entitled "Termination of Patent License Agreements" is a valid or enforceable contract or agreement of any sort which imposes any legal duties or obligations on D13. And further aver that said purported "agreement" was not signed by anyone with authority to bind D13.

18.     Deny knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "17" of the Complaint. Deny that the document entitled "Termination of Patent License Agreements" is a valid or enforceable contract or agreement of any sort which imposes any legal duties or obligations on D13. And further aver that said purported "agreement" was not signed by anyone with authority to bind D13.

19.    Deny knowledge or information sufficient to form a belief as to the allegations contained in Paragraph "18" of the Complaint. Deny that the document entitled "Termination of Patent License Agreements" is a valid or enforceable contract or agreement of any sort which imposes any legal duties or obligations on D13. And further aver that said purported "agreement" was not signed by anyone with authority to bind D13.

20.     Deny that the "Termination of Patent License Agreements" is a valid or enforceable contract or agreement of any sort, that D13 was even aware of, which imposes any legal duties or obligations on D13 for which D13 would make any of the allegations or assertions identified in paragraph "19" of the Complaint. And further aver that said purported "agreement" was not signed by anyone with authority to bind D13.

21.    Deny each and every factual allegation contained in Paragraph "20" of the Complaint. Deny that the document entitled "Termination of Patent License Agreements" is a valid or enforceable contract or agreement of any sort which imposes any legal duties or obligations on D13. And further aver that said purported "agreement" was not signed by anyone with authority to bind D13.

22.    Deny that the document entitled "Termination of Patent License Agreements" is a valid or enforceable contract or agreement of any sort which imposes any legal duties or obligations on D13. And further aver that said purported "agreement" was not signed by anyone with authority to bind D13. Further, D13 has no knowledge of the contents of the agreement or their meaning, effect, or interpretation and therefore is without knowledge or information sufficient to form a belief as to the allegations in paragraph "21" which discuss the agreement.

DEFENDANT'S ANSWER, COUNTERCLAIMS,
AND THIRD-PARTY COMPLAINT

23.     Deny that the document entitled "Termination of Patent License Agreements" is a valid or enforceable contract or agreement of any sort which imposes any legal duties or obligations on D13. And further aver that said purported "agreement" was not signed by anyone with authority to bind D13. Further, D13 has no knowledge of the contents of the agreement or their meaning, effect, or interpretation and therefore is without knowledge or information sufficient to form a belief as to the allegations in paragraph "22" which discuss the agreement.

24.     Deny that the document entitled "Termination of Patent License Agreements" is a valid or enforceable contract or agreement of any sort which imposes any legal duties or obligations on D13. And further aver that said purported "agreement" was not signed by anyone with authority to bind D13. Further, D13 has no knowledge of the contents of the agreement or their meaning, effect, or interpretation and therefore is without knowledge or information sufficient to form a belief as to the allegations in paragraph "23" which discuss the agreement.

25.     Deny that the document entitled "Termination of Patent License Agreements" is a valid or enforceable contract or agreement of any sort which imposes any legal duties or obligations on D13. And further aver that said purported "agreement" was not signed by anyone with authority to bind D13. Further, D13 has no knowledge of the contents of the agreement or their meaning, effect, or interpretation and therefore is without knowledge or information sufficient to form a belief as to the allegations in paragraph "24" which discuss the agreement.

DEFENDANT'S ANSWER, COUNTERCLAIMS,
AND THIRD-PARTY COMPLAINT

26.     To the extent the allegations contained in paragraph "25" of the Complaint call for a legal conclusion, no response is required. Deny that the document entitled "Termination of Patent License Agreements" is a valid or enforceable contract or agreement of any sort which imposes any legal duties or obligations on D13 for which GENGHIS should be provided a recovery of any sort, including interest. And further aver that said purported "agreement" was not signed by anyone with authority to bind D13.

27.     To the extent the allegations contained in paragraph "26" of the Complaint call for a legal conclusion, no response is required. Deny that the document entitled "Termination of Patent License Agreements" is a valid or enforceable contract or agreement of any sort which imposes any legal duties or obligations on D13 for which GENGHIS should be provided a recovery of any sort, including interest. And further aver that said purported "agreement" was not signed by anyone with authority to bind D13.

28.     To the extent the allegations contained in paragraph "27" of the Complaint call for a legal conclusion, no response is required. Deny that the document entitled "Termination of Patent License Agreements" is a valid or enforceable contract or agreement of any sort which imposes any legal duties or obligations on D13 which D13 could "breach." Admit that GENGHIS has wrongfully attempted to collect money from D13 by leveraging the void "Termination of Patent License Agreements" and wrongfully representing to D13 that it is a valid agreement. And further aver that said purported "agreement" was not signed by anyone with authority to bind D13.

DEFENDANT'S ANSWER, COUNTERCLAIMS,
AND THIRD-PARTY COMPLAINT

29.     To the extent the allegations contained in paragraph "28" of the Complaint call for a legal conclusion, no response is required. Deny that the document entitled "Termination of Patent License Agreements" is a valid or enforceable contract or agreement of any sort which imposes any legal duties or obligations on D13. And further aver that said purported "agreement" was not signed by anyone with authority to bind D13. Admit that GENGHIS has wrongfully attempted to collect money from D13 by leveraging the void agreement and wrongfully representing to D13 that it is a valid agreement.

30.     To the extent the allegations contained in paragraph "29" of the Complaint call for a legal conclusion, no response is required. Deny that the document entitled "Termination of Patent License Agreements" is a valid or enforceable contract or agreement of any sort which imposes any legal duties or obligations on D13. And further aver that said purported "agreement" was not signed by anyone with authority to bind D13. Admit that D13 is not obligated to and has not paid any money to GENGHIS on a purported "contract" it never executed or entered and deny that D13 is required to pay any demands received by the Plaintiff.

31.     To the extent the allegations contained in paragraph "30" of the Complaint call for a legal conclusion, no response is required. Deny that the document entitled "Termination of Patent License Agreements" is a valid or enforceable contract or agreement of any sort which imposes any legal duties or obligations on D13. And further aver that said purported "agreement" was not signed by anyone with authority to bind D13. Admit that D13 is not obligated to and has not paid any money to GENGHIS on a

DEFENDANT'S ANSWER, COUNTERCLAIMS,
AND THIRD-PARTY COMPLAINT

purported "contract" it never executed or entered and deny that D13 is required to pay any demands received by the Plaintiff.

32.    To the extent the allegations contained in paragraph "31" of the Complaint call for a legal conclusion, no response is required. Deny that the document entitled "Termination of Patent License Agreements" is a valid or enforceable contract or agreement of any sort which imposes any legal duties or obligations on D13. And further aver that said purported "agreement" was not signed by anyone with authority to bind D13. D13 denies there exists any basis in law or fact for GENGHIS' claims, and that any purported injury was caused by GENGHIS' own actions or omissions.

33.    To the extent the allegations contained in paragraph "32" of the Complaint call for a legal conclusion, no response is required. D13 denies there exists any basis in law or fact for GENGHIS' claims, and that any purported damages were caused by GENGHIS' own actions or omissions.

**ANSWERING THE "COUNT II ACCOUNT STATED" SECTION OF THE COMPLAINT**

34.    As to paragraph 33, D13 repeats and re-alleges its responses to the allegations contained in paragraphs 1 through 32 of the Complaint, as indicated herein above, as if fully set forth herein.

35.    To the extent the allegations contained in paragraph "34" of the Complaint call for a legal conclusion, no response is required. To the extent that there is an allegation that the relationship between the parties is that of a debtor to creditor, the same is denied.

DEFENDANT'S ANSWER, COUNTERCLAIMS,
AND THIRD-PARTY COMPLAINT

36.     To the extent the allegations contained in paragraph "35" of the Complaint call for a legal conclusion, no response is required. D13 disputes any basis for the imposition of Colorado law in this case.

37.     Deny each and every allegation contained in Paragraph "36" of the Complaint. Deny that the document entitled "Termination of Patent License Agreements" is a valid or enforceable contract or agreement of any sort which imposes any legal duties or obligations on D13. And further aver that said purported "agreement" was not signed by anyone with authority to bind D13.

38.     To the extent the allegations contained in paragraph "37" of the Complaint call for a legal conclusion, no response is required. Otherwise, deny each and every allegation contained in Paragraph "37" of the Complaint. D13 denies there exists any basis in law or fact for GENGHIS' claims.

39.     To the extent the allegations contained in paragraph "38" of the Complaint call for a legal conclusion, no response is required. Otherwise, deny each and every allegation contained in Paragraph "38" of the Complaint. D13 denies there exists any basis in law or fact for GENGHIS' claims.

40.     To the extent the allegations contained in paragraph "39" of the Complaint call for a legal conclusion, no response is required. Otherwise, deny each and every allegation contained in Paragraph "39" of the Complaint. D13 denies there exists any basis in law or fact for GENGHIS' claims.

41.     To the extent the allegations contained in paragraph "40" of the Complaint call for a legal conclusion, no response is required. Otherwise, deny each and every allegation

DEFENDANT'S ANSWER, COUNTERCLAIMS,
AND THIRD-PARTY COMPLAINT

contained in Paragraph "40" of the Complaint. D13 denies there exists any basis in law or fact for GENGHIS' claims.

42.    To the extent the allegations contained in paragraph "41" of the Complaint call for a legal conclusion, no response is required. Otherwise, deny each and every allegation contained in Paragraph "41" of the Complaint. D13 denies there exists any basis in law or fact for GENGHIS' claims.

## II.    DEFENDANT D13'S AFFIRMATIVE DEFENSES

### AS FOR A FIRST AFFIRMATIVE DEFENSE

GENGHIS has failed to state a cause of action upon which relief can be granted against D13, and the Complaint should be dismissed in its entirety *with prejudice*.

### AS FOR A SECOND AFFIRMATIVE DEFENSE

To the extent GENGHIS asserts causes of action based on equity, those purported causes of action are barred, in whole or in party, by the doctrine of unclean hands.

### AS FOR A THIRD AFFIRMATIVE DEFENSE

While denying that GENGHIS has suffered any damages, any damages and injuries alleged by GENGHIS are not attributable to any act, conduct or omission on the part of D13.

### AS FOR A FOURTH AFFIRMATIVE DEFENSE

Any injuries or damages sustained by GENGHIS were caused by the fault, want of care, culpable conduct, breach of contract or other conduct of GENGHIS.

### AS FOR A FIFTH AFFIRMATIVE DEFENSE

D13 acted at all times in good faith and in full compliance with applicable law and without malice or intent to injure GENGHIS.

DEFENDANT'S ANSWER, COUNTERCLAIMS,
 AND THIRD-PARTY COMPLAINT

## AS FOR A SIXTH AFFIRMATIVE DEFENSE

GENGHIS' causes of action are barred, in whole or in party, to the extent GENGHIS seeks

multiple recoveries for the same alleged injury.

## AS FOR A SEVENTH AFFIRMATIVE DEFENSE

GENGHIS' claims are barred, in whole or in part, by the doctrine of estoppel.

## AS FOR A EIGHTH AFFIRMATIVE DEFENSE

GENGHIS' claims are barred, in whole or in part, by the doctrine of waiver.

## AS FOR A NINTH AFFIRMATIVE DEFENSE

 GENGHIS' claims are barred, in whole or in part, by the doctrine of laches.

## AS FOR A TENTH AFFIRMATIVE DEFENSE

GENGHIS' claims are barred, in whole or in part, by the statute of limitations.

## AS FOR A ELEVENTH AFFIRMATIVE DEFENSE

GENGHIS' claims are barred, in whole or in part, by the statute of frauds.

## AS FOR A TWELFTH AFFIRMATIVE DEFENSE

GENGHIS' claims are barred, in whole or in part, by its failure to mitigate damages.

## AS FOR ANY ADDITIONAL AFFIRMATIVE DEFENSES

D13 is not presently able to determine all of the affirmative defenses it is entitled to

assert, and may later determine there are additional affirmative defenses that are applicable in

this case. D13 reserves the right to supplement its Answer with additional facts and/or

Affirmative Defenses to GENGHIS' Complaint.

DEFENDANT'S ANSWER, COUNTERCLAIMS,
 AND THIRD-PARTY COMPLAINT

### III.    D13'S COUNTERCLAIMS AGAINST GENGHISCOMM, LLC AND THIRD-PARTY COMPLAINT AGAINST STEVEN SHATTIL AND JONATHAN HUNTER

Defendant-Counterclaimant-Third-Party Plaintiff DEPARTMENT 13, INC. ("D13") files its Counterclaims against Plaintiff GENGHISCOMM HOLDINGS, LLC ("GENGHIS"), and its Third-Party Complaint against Third-Party Defendants JONATHAN HUNTER ("HUNTER") and STEVEN SHATTIL ("SHATTIL") and, in support thereof, would respectfully show as follows:

### THE PARTIES

1.      Counterclaimant-Third-Party Plaintiff D13 is a Delaware corporation with its principal place of business in Maryland.

2.      Upon information and belief, GENGHIS is, and at all times relevant hereto has been a Colorado corporation with its principal place of business in Colorado.

3.      Upon information and belief, Third-Party Defendant SHATTIL is an individual citizen and resident of Colorado. On information and belief, SHATTIL is the sole member and director of GENGHIS.

4.      Upon information and belief, Third-Party Defendant HUNTER is an individual citizen and resident of Maryland.

### JURISDICTION AND VENUE

5.      The court has jurisdiction over the Third-Party Plaintiff's counterclaims pursuant to Fed. R. Civ. Pro. 13, and 29 U.S.C. § 1367.

6.      The court has ancillary jurisdiction over the Third-Party Defendants pursuant to Fed. R. Civ. Pro. 14, there is complete diversity between the main Plaintiff and Defendant concerning the claims in the original action, and the Third-Party Plaintiff's

DEFENDANT'S ANSWER, COUNTERCLAIMS,
AND THIRD-PARTY COMPLAINT

claims bear a logical relationship to the aggregate core of operative facts of the main action which meets the requirements of federal diversity jurisdiction pursuant to 28 U.S.C. § 1332.  The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because this district is where a substantial part of the events or omissions giving rise to the claims occurred, and where HUNTER, SHATTIL, and GENGHIS focused their wrongful, illegal and improper contracting activity and scheme.

### FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

8.      D13 incorporates by reference all preceding responses to the Complaint and the separate Affirmative Defenses above (the "Answer"), as if fully set forth herein.

9.      On or about November 30, 2021, D13 and HUNTER entered into an Independent Contractor Agreement ("ICA") to govern the parties' working relationship (see Exhibit "A"). Pursuant to the ICA, D13 agreed to pay HUNTER $15,000 a month for his services.

10.     Before this time, Hunter had been working as an employee for D13 and his work duties required contact with SHATTIL, who was formerly D13's Chief Technology Officer.

11.     SHATTIL and the company of which he was the sole member, GENGHIS, was the owner of various patents, some of which were licensed to D13, from 2015 to 2020, while he was employed by D13. On the whole, these patents were of no economic value to D13 because they were not generating any sales or revenue.

DEFENDANT'S ANSWER, COUNTERCLAIMS,
AND THIRD-PARTY COMPLAINT

12.    The ICA, by its own terms, was to be "governed by Maryland law" and was for a term of one year unless terminated prior by either party in writing.

13.    The ICA provided for HUNTER to provide D13 with "corporate management services" that were "consistent with instructions from [D13]."

14.    More specifically, the ICA provided that HUNTER would be an "independent contractor of Company" and "shall have authority to act as agent for" D13 in "**matters of advertising sales only**."  With respect to any sales HUNTER generated for D13, section 1.C of the ICA required him to "follow protocols and pricing structures set for by company and inform company of all prospect interactions, details set forth in pitches, expectations and outcomes. **Company must agree to proposed sales before contractor executes agreement on company's behalf.**" (emphasis added)

15.    In connection with signing the ICA, Hunter relinquished control as CEO of D13. From then on, the CEO of D13 was Lee Croft.

16.    Despite the clear terms of the ICA that limited Hunter's authority to "sales" and requiring that D13 company approval be first obtained for such sales agreements, Hunter, without any authority, entered into a much wider-ranging agreement purporting to bind D13 when, allegedly on the company's behalf (but unbeknownst to D13), HUNTER elected to sign the document entitled "Termination of Patent License Agreements," which is not admitted to be a validly binding document (hereinafter "TPA").  This was done so without ever informing anyone at D13 regarding either his intention to sign this purported agreement, any detail or draft of the agreement, or his actual execution of the "agreement" after he had done so.

DEFENDANT'S ANSWER, COUNTERCLAIMS,
 AND THIRD-PARTY COMPLAINT

17.    HUNTER wrongfully signed the TPA as "CEO" of D13 when, in fact, he was not the CEO at the time of the TPA's signing.

18.    On information and belief, HUNTER and SHATTIL both knew HUNTER was not CEO of D13 and had no authority to enter into the TPA on behalf of D13. Nevertheless, they decided to create and execute the TPA in order to extract settlement leverage from D13 in a likely lawsuit in which GENGHIS contended, as here, that the TPA fixed the amount of money due to GENGHIS for the patent licenses.

19.    On information and belief, HUNTER and SHATTIL had full and complete knowledge that D13 had never before, and never would, acknowledge any of the purported monies owed or the liability to GENGHIS, that the improper TPA would so stipulate and that D13 had previously denied the amount said to be owed.

20.    On information and belief, it was SHATTIL who drafted the TPA with a careful eye to wrongfully obtain as much money as possible from D13, and place D13 in the worst legal position imaginable with respect to the patent licenses.

21.    HUNTER and SHATTIL both intended that the wrongfully created and executed TPA would be used in litigation in order to legally bind D13 to liabilities that were purely fictitious and unsupported.

22.    On information and belief, HUNTER made no material changes to the TPA and recklessly accepted the one-sided terms proposed by SHATTIL and GENGHIS.

23.    The stipulated "arrears" amounts HUNTER agreed to in the TPA are untethered to reality and unsupported by the facts.

DEFENDANT'S ANSWER, COUNTERCLAIMS,
AND THIRD-PARTY COMPLAINT

24.     On information and belief, during these discussions, HUNTER and SHATTIL agreed to share the proceeds of any recovery obtained from D13 through the use of the void and improper TPA. On information and belief, HUNTER and SHATTIL also agreed to have Hunter use D13 money to pay the patent maintenance fees on GENGHIS' patents until such time as the money under the TPA arrived and could be shared amongst each other.

25.     In Section 3.1 of the TPA, HUNTER falsely and wrongfully represented that "the execution, delivery, and performance by Department 13 of this Agreement have been duly authorized by all the requisite corporate action on the part of Department 13, including any requisite approval of its stockholders and directors" and does "not violate any provision of law, the articles of organization, bylaws, or any other charter document or department 13 or any contract or organization binding on Department 13." HUNTER had full and complete knowledge that both of these statements were materially false, and, upon information and belief, SHATTIL did as well.

26.     It is completely inexplicable for HUNTER to enter into this type of agreement (even had it been with in his limited "sales" purview), and to wrongfully acknowledge a very large debt (which is vehemently disputed by Defendant herein), without company knowledge and approval, unless HUNTER intended to personally benefit from it by hiding the same from D13. Upon information and belief, HUNTER knew or should have known that D13 and the Plaintiff had not agreed on any debt amount.

27.     No one at D13 had any knowledge or participation in the execution of the TPA by HUNTER. D13 first learned of the agreement when GENGHIS' counsel provided it to D13 shortly before the filing of this lawsuit in April of 2022.

DEFENDANT'S ANSWER, COUNTERCLAIMS,
 AND THIRD-PARTY COMPLAINT

28.     Had HUNTER informed D13 of the potential execution of the TPA, D13 would never have approved it because the underlying patents were worthless and had been so for years. HUNTER acted without any authority, apparent, implied, or actual, in his unilateral actions in signing the TPA.

29.     On or about May 11, 2022, GENGHIS filed the instant Complaint against D13 in the United States District Court, Eastern District of Texas (Marshall Division) (Case No. 2:22-cv-00142). The Complaint attempts to set forth causes of action against D13 for breach of contract and account stated. The Complaint, for purposes of its allegations only, is incorporated herein by reference.

30.     As a consequence of the improper creation and execution of the TPA by HUNTER, SHATTIL, and GENGHIS, D13 has been forced to incur, and will continue to be forced to incur, legal fees, costs and expenses both to investigate and to dispute and set aside the wrongfully-based TPA, in amounts that will be proven at trial.

31.     Upon learning of HUNTER's misdeeds when it received a copy of the Complaint, and after investigation, D13 ended its relationship with Hunter by terminating the ICA on June 30, 2022.

**<u>COUNT ONE</u>**
**BREACH OF CONTRACT**
**(Against HUNTER)**

32.     D13 repeats and re-alleges each and every allegation contained in the paragraphs above; the allegations set forth in the preceding paragraphs are incorporated as though copied verbatim herein, with the same force and effect as if fully set forth at length herein.

DEFENDANT'S ANSWER, COUNTERCLAIMS,
 AND THIRD-PARTY COMPLAINT

33.     The ICA is a valid and legally enforceable contract supported by adequate consideration.

34.     D13 has performed all of its obligations under the ICA vis a vis HUNTER including paying him monies due under the contract.

35.     The ICA contains precise terms, including a specific duration, and those terms are capable of enforcement.

36.     Contrary to the express terms of the ICA, which specifically limited HUNTERS' authority to sales and even those such agreements had to be pre-approved by D13, HUNTER materially breached the ICA by, among other things, executing the TPA with GENGHIS without obtaining D13 authority or approval or in any way alerting D13 to these negotiations.

37.     As a result of the material breach of the ICA by Hunter, D13 has sustained damages in an amount to be determined at trial, but believed to be in excess of $2,000,000.00.

**COUNT TWO**
**FRAUDULENT CONCEALMENT**
**(Against HUNTER)**

38.     D13 repeats and re-alleges each and every allegation contained in the paragraphs above; the allegations set forth in the preceding paragraphs are incorporated as though copied verbatim herein, with the same force and effect as if fully set forth at length herein.

39.     The ICA, freely entered into by both parties and supported by adequate consideration, created a duty in HUNTER to apprise D13 of all material facts relating to the work he was contemplating on behalf of the Company. This duty is reflected in

DEFENDANT'S ANSWER, COUNTERCLAIMS,
 AND THIRD-PARTY COMPLAINT

section 1(b) of the ICA in which HUNTER agreed to "conduct the services under this Agreement in a moral and ethical capacity consistent with a Director's obligation to the Company."

40.    While serving as an independent contractor providing management services to D13, Hunter intentionally and knowingly concealed from D13 the material fact that he was (a) in the process of negotiating the TPA and then (b) ultimately falsely signed the TPA as "CEO" of D13 and accepted the fictitious D13 arrears dollar amounts stated therein.

41.    These true facts were known or accessible only to HUNTER and were not known to or within the diligent observation of D13.

42.    This fraudulent concealment of material facts was intended to defraud and deceive D13 in order to prevent it from "getting involved" in these negotiations and blocking the execution of the TPA.

43.    Because of HUNTER's fraudulent concealment of facts, and in reasonable reliance that the facts suppressed did not exist, D13 did nothing to block or stop the execution of the TPA before it was signed by HUNTER.

44.    D13's reliance was justified because it had no reason before this time to question whether HUNTER was dealing with D13 fairly, honestly and in good faith, and because it had reasonable grounds to expect HUNTER to act in a professional and ethical manner and abide by the ICA terms requiring him to apprise D13 before he was permitted to sign "sales" agreements, let alone broad-ranging agreements that purported to confess liability.

DEFENDANT'S ANSWER, COUNTERCLAIMS,
AND THIRD-PARTY COMPLAINT

45.    As a proximate result of HUNTER' fraudulent concealments, D13 has been damaged in an amount to be determined at trial but believed to be in excess of $2,000,000.00.

46.    In suppressing the facts as herein alleged, HUNTER acted wrongfully, willfully, maliciously, oppressively and with callous and intentional disregard for D13's interests, knowing his conduct was substantially likely to subject D13 to unjust hardship. Accordingly, D13 is entitled to punitive damages.

### COUNT THREE
### BREACH OF EXPRESS CONTRACTUAL INDEMNITY
### (Against HUNTER)

47.    D13 repeats and re-alleges each and every allegation contained in the paragraphs above; the allegations set forth in the preceding paragraphs are incorporated as though copied verbatim herein, with the same force and effect as if fully set forth at length herein.

48.    The ICA, freely entered into by both parties and supported by adequate consideration, contains an indemnification provision that provides as follows: "Contractor agrees to defend, indemnify and hold harmless company and its officers, directors, employees and agents, from and against all claims, liabilities, losses, costs, damages, judgments, penalties, fines, attorneys' fees, court costs and other legal expenses, insurance deductibles and all other expenses arising out of or relating to, directly or indirectly, from (i) the negligent, grossly negligent or intentional act or omission of Contractor….(ii) Contractor's failure to perform any of its obligations under this Agreement, (iii) any act or omission of Contractor in connection with the work." See Exhibit "A", section 11.

DEFENDANT'S ANSWER, COUNTERCLAIMS,
 AND THIRD-PARTY COMPLAINT

49.    By reason of the Complaint herein, D13 has been required to retain the services of counsel to defend against GENGHIS' action, and has thereby incurred, and will continue to incur attorney's fees and other litigation and defense costs.

50.    HUNTER is contractually bound to indemnify D13 for any attorney's fees, judgments, damages, losses, litigation costs and other expenses D13 incurs that arise out of any acts or omissions of HUNTER'S leading to the signing of the TPA.

51.    D13 has notified HUNTER of his obligation to indemnify it for any and all costs related to this action, but HUNTER has refused to do so.

52.    D13 is thereby entitled to, and hereby seeks, judgment for express contractual indemnity in this action against HUNTER for any and all amounts that D13 is damaged by virtue of HUNTER's conduct while affiliated with D13, and for all attorney's fees and other litigation and defense costs incurred in defending against GENGHIS' action.


## COUNT FOUR
### BREACH OF IMPIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against HUNTER)

53.    D13 repeats and re-alleges each and every allegation contained in the paragraphs above; the allegations set forth in the preceding paragraphs are incorporated as though copied verbatim herein, with the same force and effect as if fully set forth at length herein.

54.    As part of the ICA, there existed a covenant of good faith and fair dealing that HUNTER would not do anything to impair the benefits of the bargain that existed at all times in the relationship between him and D13.

DEFENDANT'S ANSWER, COUNTERCLAIMS,
 AND THIRD-PARTY COMPLAINT

55.    HUNTER breached the implied covenant of good faith and fair dealing in numerous ways as alleged herein.

56.    As a direct and proximate result of the breach of implied covenant of good faith and fair dealing, D13 has suffered damages in an amount to be determined at trial, but believed to be in excess of $2,000,000.00.

## COUNT FIVE
### NEGLIGENCE
### (Against HUNTER)

57.    D13 repeats and re-alleges each and every allegation contained in the paragraphs above; the allegations set forth in the preceding paragraphs are incorporated as though copied verbatim herein, with the same force and effect as if fully set forth at length herein.

58.    At all times, HUNTER owed D13 a duty to use reasonable and professional care in the execution of his independent contractor services on behalf of D13.

59.    HUNTER breached his duty by failing to exercise reasonable care in the performance of his duties on behalf of D13, particularly with regard to his signing of the TPA, failure to inform D13 of the existence of such a document, and improperly accepting the fictitious D13 "arrears" amounts stated therein.

60.    HUNTER's conduct fell well below the professional standard of care of an independent contractor performing corporate management services.

61.    As a direct and proximate result of HUNTER's negligence, D13 has suffered damages in an amount to be determined at trial, but believed to be in excess of $2,000,000.00.

DEFENDANT'S ANSWER, COUNTERCLAIMS,
 AND THIRD-PARTY COMPLAINT

## COUNT SIX
## CONSPIRACY TO DEFRAUD
### (Against HUNTER, SHATTIL, AND GENGHIS)

62.    D13 repeats and re-alleges each and every allegation contained in the paragraphs above; the allegations set forth in the preceding paragraphs are incorporated as though copied verbatim herein, with the same force and effect as if fully set forth at length herein.

63.    HUNTER, SHATTIL, and GENGHIS combined and agreed with each other and/or others to defraud D13 by creating and executing the improper TPA and then using it as the purported "basis" for this lawsuit.

64.    Various representations were made by each of HUNTER, SHATTIL, and GENGHIS representing that the TPA was a valid and legally enforceable agreement when each of them knew these representations were materially false and that HUNTER was not a proper signatory to the agreement.

65.    These statements were made with the intent of an improper scheme to lure D13 to pay over $2,000,000.00 for worthless patent rights.

66.    HUNTER, SHATTIL, and GENGHIS all committed at least one overt act in furtherance of such conspiracy including (a) SHATTIL and GENGHIS' drafting of the TPA and (b) making misrepresentations regarding HUNTER's authority to enter into the TPA on D13's behalf and (c) making misrepresentations regarding the value of the patent rights at issue.

67.    HUNTER, SHATTIL, and GENGHIS acted with the common intent to defraud D13 and understood that all of them shared in that common purpose.

DEFENDANT'S ANSWER, COUNTERCLAIMS,
 AND THIRD-PARTY COMPLAINT

68.     The conduct of HUNTER, SHATTIL, and GENGHIS was willful, wanton, malicious, and oppressive.

69.     HUNTER, SHATTIL, and GENGHIS' unlawful conspiracy has directly, legally, and proximately caused and continues to cause injuries to D13 in its business and property, in an amount to be proven at trial.

**COUNT SEVEN**
**UNFAIR COMPETITION**
**(Against HUNTER, GENGHIS AND SHATTIL)**

70.     D13 repeats and re-alleges each and every allegation contained in the paragraphs above; the allegations set forth in the preceding paragraphs are incorporated as though copied verbatim herein, with the same force and effect as if fully set forth at length herein.

71.     By reason of the above, HUNTER, SHATTIL, and GENGHIS have engaged in unfair and improper business practices.

72.     HUNTER, SHATTIL, and GENGHIS worked together to create an improper and materially false agreement (the TPA) in which they stated entirely fictions "arrears" amounts based on patents that had no value and caused the execution of the agreement by someone they all knew lacked authority to bind D13.

73.     From this unfair and improper business practice, HUNTER, SHATTIL, and GENGHIS have earned (unless this Court voids the agreement) contractual business rights and entitlements (the stipulated arrears amounts) which they otherwise would have no legal entitlement.

DEFENDANT'S ANSWER, COUNTERCLAIMS,
AND THIRD-PARTY COMPLAINT

74.     Upon information and belief, SHATTIL and GENGHIS also made use of unfair and improper business practices when HUNTER wrongfully and without any authority used D13 corporate funds to pay certain patent license and maintenance fees that SHATTIL and GENGHIS would otherwise have had to pay themselves.

75.     As a direct and proximate consequence of unfair and improper business practices by HUNTER, SHATTIL, and GENGHIS, D13 has suffered damages in an amount to be proven at trial.

**COUNT EIGHT**
**UNJUST ENRICHMENT**
**(Against HUNTER, GENGHIS AND SHATTIL)**

76.     D13 repeats and re-alleges each and every allegation contained in the paragraphs above; the allegations set forth in the preceding paragraphs are incorporated as though copied verbatim herein, with the same force and effect as if fully set forth at length herein.

77.     By reason of the above, HUNTER, SHATTIL, and GENGHIS were unjustly enriched when they received a substantial benefit in the form of the purported legal rights set forth in the TPA and executed by Hunter, purported benefits they would not have received but for their improper and unauthorized actions.

78.     SHATTIL and GENGHIS also were unjustly enriched through the wrongful and unauthorized payment by HUNTER of various patent license and maintenance fees using the corporate funds of D13.

79.     As a direct and proximate consequence of these actions, HUNTER, SHATTIL and GENGHIS have been unjustly enriched in an amount to be proven at trial.

DEFENDANT'S ANSWER, COUNTERCLAIMS,
AND THIRD-PARTY COMPLAINT

## COUNT NINE
## DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. 2201
### (Against GENGHIS, SHATTIL AND HUNTER)

80.     D13 repeats and re-alleges each and every allegation contained in the paragraphs above; the allegations set forth in the preceding paragraphs are incorporated as though copied verbatim herein, with the same force and effect as if fully set forth at length herein.

81.     There is, as alleged above, an actual substantial controversy between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

82.     Specifically, an actual controversy has arisen and now exists between D13 and GENGHIS, SHATTIL and HUNTER, concerning their respective rights and obligations under the TPA, and concerning the liability of the co-conspirators (GENGHI, SHATTIL and HUNTER) for creating and signing the same improper document. D13 contends that the TPA was not executed by any D13 agent with authority to do so. As such, D13 contends that the TPA is void or voidable and cannot be in any way enforced by GENGHIS in any manner.

83.     GENGHIS contends in its Complaint the TPA is a valid and legally enforceable agreement.

84.     D13 desires a judicial declaration of its rights and obligations related to the TPA, that such TPA is invalid and is not a legally enforceable agreement.

85.     A judicial declaration is necessary and appropriate at this time so that D13 may ascertain its rights and obligations related to the subject matter of the TPA. The status quo creates damaging uncertainty regarding the validity of the TPA.

DEFENDANT'S ANSWER, COUNTERCLAIMS,
 AND THIRD-PARTY COMPLAINT

## IV.    CONDITIONS PRECEDENT

86.    All conditions precedent to D13's third-party claims for relief have been performed or have occurred, or were otherwise met, waived, or excused.

## V.    JURY DEMAND

87.    D13 demands a jury trial on all issues so triable.

## VI.    RELIEF REQUESTED

### A.  ON PLAINTIFF'S COMPLAINT:

WHEREFORE, PREMISES CONSIDERED, Defendant D13 demands judgment in its favor dismissing the Plaintiff's Complaint in its entirety *with prejudice*, together with its attorneys' fees and costs of suit, along with such other and further relief as this Court may deem just and proper.

### B.  ON D13's COUNTERCLAIMS and THIRD-PARTY COMPLAINT:

WHEREFORE, PREMISES CONSIDERED, Defendant, Counterclaimant, and Third-Party Plaintiff D13 prays that upon hearing, it be awarded judgment for damages as prayed for herein, pre- and post-judgment interest, attorney's fees and costs, punitive damages against the Counter Defendant and Third-Party Defendants, along with such other and further relief as this Court may deem just and proper, and more specifically:

DEFENDANT'S ANSWER, COUNTERCLAIMS,
 AND THIRD-PARTY COMPLAINT

1.      D13 therefore prays that judgment be entered in its favor and against HUNTER in accordance with the relief requested herein for D13's actual damages, punitive damages, prejudgment interest, post-judgment interest, court costs, reasonable and necessary attorneys' fees, and for all such other relief, general or specific, to which D13 is determined to be justly entitled, whether at law or in equity;

2.      D13 therefore prays that judgment be entered in its favor and against SHATTIL in accordance with the relief requested herein for D13's actual damages, punitive damages, prejudgment interest, post-judgment interest, court costs, reasonable and necessary attorneys' fees, and for all such other relief, general or specific, to which D13 is determined to be justly entitled, whether at law or in equity;

3.      D13 therefore prays that judgment be entered in its favor and against GENGHIS in accordance with the relief requested herein for D13's actual damages, punitive damages, prejudgment interest, post-judgment interest, court costs, reasonable and necessary attorneys' fees, and for all such other relief, general or specific, to which D13 is determined to be justly entitled, whether at law or in equity; and

4.      D13 therefore prays that a declaratory judgement be entered into in its favor declaring the TPA to be invalid, void, and not a legally enforceable agreement, together with such other relief, general or specific, to which D13 is determined to be justly entitled, whether at law or in equity.

DEFENDANT'S ANSWER, COUNTERCLAIMS,
 AND THIRD-PARTY COMPLAINT

Dated: July 11, 2022

Respectfully submitted,

*/s/ T. Greg Jackson*

T. Gregory Jackson
     Texas Bar No. 24004718
     greg.jackson@arcadijackson.com
Aaron Christian
     Texas Bar. No. 24076089
     aaron.christian@arcadijackson.com
ARCADI JACKSON, LLP
2911 Turtle Creek Blvd., Suite 800
Dallas, TX 75219
Tel. (214) 865-6458

Robert J. Shapiro*
rshapiro@theshapirofirm.com
(NY Bar No. 2621076)
Jonathan S. Shapiro*
jshapiro@theshapirofirm.com
THE SHAPIRO FIRM, LLP
270 Madison Ave., Suite 1801
New York, NY 10016
Tel. (212) 391-6464
*(\*Pro-Hac Vice Motions to be Filed)*

**COUNSEL FOR DEFENDANT,
COUNTERCLAIMANT AND THIRD-
PARTY PLAINTIFF-
DEPARTMENT 13, INC.**

To:    Alison Aubry Richards
      (IL Bar No. 6285669, *also admitted in ED Texas*)
      Global IP Law Group, LLC
      55. W. Monroe St., Suite 3400
      Chicago, Illinois 60603
      Tel. (312) 241-1500
      arichards@giplg.com

      **COUNSEL FOR PLAINTIFF-
      COUNTER DEFENDANT**

DEFENDANT'S ANSWER, COUNTERCLAIMS,
AND THIRD-PARTY COMPLAINT

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 11, 2022, I filed the foregoing document with the Clerk of the Court for the U.S. District Court, Eastern District of Texas, Marshall Division. I hereby certify that I have served the document on all counsel and/or *pro-se* parties of record by electronic mail and/or a manner authorized by the Federal Rules of Civil Procedure 5(b)(2).

<u>*/s/ T. Greg Jackson*</u>
T. Gregory Jackson

DEFENDANT'S ANSWER, COUNTERCLAIMS,
AND THIRD-PARTY COMPLAINT